DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 5:08 CR 189 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Luis Alberto Mendoza-Almendarez, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.  History of the Case

The defendant, Luis Alberto Mendoza-Almendarez (hereinafter Mendoza), was indicted on April 23, 2008 following the government's successful prosecution in the Spragling case, including the successful prosecution of co-conspirator Delores Borquez-Willis.  Count I of the indictment charged the defendant with conspiracy to possess with the intent to distribute both cocaine and heroin in violation of Title 21 Section 846 United States Code.  The defendant was eventually arraigned on May 27, 2008 and entered a plea of not guilty.  His trial was eventually scheduled for November 19, 2008.  On November 19, 2008, the defendant entered a plea of guilty and is awaiting sentencing.

The defendant subsequently filed a motion to withdraw his guilty plea.  Initially, the Court denied the defendant's motion to withdraw his guilty plea.  After the defendant renewed his motion to withdraw his guilty plea, the Court conducted an evidentiary hearing on June 3, 2009 for the purpose of addressing the defendant's renewed *pro se* motion to withdraw his guilty plea.  At the conclusion of the evidentiary hearing, the Court requested the government to file

(5:08 CR 189)

proposed findings of fact.  The government complied on August 10, 2009.  (Doc. No. 116)

The Court granted the defendant, acting in a *pro se* capacity, leave to file competing proposed findings of fact by August 25, 2009.  On August 26, 2009, the defendant, in his *pro se* capacity, filed a six-page document styled "Post Hearing Brief."  Additionally, the Court directed the Federal Defender's Office to provide the defendant with a copy of the transcript of the evidentiary hearing conducted on June 3, 2009.  On August 11, 2009, the Federal Defender's Office filed a document indicating that a copy of the transcript of the  evidentiary hearing had been provided to the defendant.  (Doc. No. 118).

Before the Court completes the history of the case, it important to report that the present case involving the defendant relates directly to the earlier prosecution filed by the government involving numerous defendants charged with operating a drug conspiracy in the Akron, Ohio area.   The case has been identified as the "Spragling" case in view of the fact that Michael Spragling was identified as the major leader of the drug conspiracy located in Akron.  Other defendants in the Spragling case included Jaime Del Rio, Robert Giovanni Flores, Jonathan Robert Foreman, Anthony Dewan Groce, Jerome Spragling, Reginald Johnson and Delores Borquez-Willis.  (*See* Case No. 5:06 CR 239 in the Northern District of Ohio)

The Sixth Circuit, in an unpublished decision, addressed sentencing issues with respect to Michael Lashawn Spragling in its case number 07-3078 and filed an additional published opinion involving search issues with respect to Robert Giovanni Flores in its case number

2

(5:08 CR 189)

08-3359.[1]

 The only defendant to go to trial in the Spragling case was the defendant, Delores Borquez-Willis.  She was convicted and was awaiting sentencing when she agreed to cooperate with the government.  During the sentencing hearing of Delores Borquez-Willis, the Court was advised that Delores Borquez-Willis gave testimony before the grand jury and declared that the defendant was  the voice identified as Joe Diaz on the extensive Title III wiretaps in the Spragling case.[2]

 The indictment in this case followed the Delores Borquez-Willis testimony before the grand jury.  At the request of the government, the Court delayed the sentencing of Delores Borquez-Willis.

## II.  The Court's Findings of Fact

 At the conclusion of the evidentiary hearing conducted on June 2, 2009, the Court requested a summary of findings of fact for the Court to consider and potentially adopt.  The government has filed its memorandum containing proposed findings of fact.  See Doc. No. 116.

 Mr. Timothy Ivey of the Federal Defender's Office and presently assigned as counsel to the defendant, has filed separate proposed findings of fact.  See Doc. No. 121.

---

[1]The published decision in the Flores case provides a brief factual discussion of the drug-dealing activities related to Michael Lashawn Spragling.

[2]The transcript of the sentencing hearing for the defendant Delores Borquez-Willis has been filed.  (See doc. No. 324.)  During the sentencing hearing, counsel for the government summarized the cooperation of Delores Borquez-Willis which included identifying the defendant as Joe Diaz.  A transcript of the sentencing hearing for Delores Borquez-Willis is attached hereto as Appendix I.

(5:08 CR 189)

Additionally, the defendant, acting in a *pro se* capacity, has filed a brief following the evidentiary hearing.  See Doc. No. 119.

After a review of the testimony presented at the June 3, 2009 evidentiary hearing, the Court makes the following findings of fact.

1.  On May 27, 2008, Mendoza was arraigned on an indictment which charged him with conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin.  The Court appointed Attorney Damian A. Billak as Mendoza's counsel, and scheduled trial for August 4, 2008.

2.  Subsequent to the arraignment, Assistant United States Attorney (AUSA) Samuel A. Yannucci, had several general discussions with Attorney Billak about resolving Mendoza's case by way of a guilty plea.  The discussions were summarized in a July 8, 2008, correspondence to attorney Billak (Defense Exhibit 1), which provided in part:

> It appears Mr. Mendoza has two prior drug felony convictions. Based upon those convictions, and the level of drug dealing here (over 5 kilograms of cocaine and 1 kilogram of heroin), Mr. Mendoza faces the potential of a mandatory life sentence if convicted at trial.
>
> Our office's usual approach in cases of this type is (1) to permit a plea without cooperation to a mandatory minimum twenty years, or (2) to "back-down" from the twenty years should the defendant offer substantial assistance.  While I understand Mr. Mendoza will not testify, the DEA case agent believes your client would have a significant body of information about gang and drug related activities in California (and perhaps elsewhere) that would be useful intelligence.  Obviously, I can't speak with any certainty as to the extent of any reduction at this point; however, **a good faith statement** by your client could result in a meaningful reduction from the 240 months.  (Emphasis in original).

4

(5:08 CR 189)

> I understand the importance and need for confidentiality in this
> case, and believe a mutually favorable resolution can be structured
> without a reference, or even hint of cooperation in the plea
> agreement, pre-sentence report, and/or court record.  One such
> means possibly could be a plea agreement similar to that given to
> Robert Giovani Flores, that is, a Base Offense Level of 32, minus 3
> for acceptance of responsibility, and an advisory U.S.S.G. range
> (at Criminal History Category VI) of 151 - 188 months. [Footnote:
> Under this scenario, the government would simply forego asserting
> the section 851 sentence enhancements.  Note: just for your
> information, Flores received a 120 months sentence - but he was a
> Criminal History Category II.]  Section 3553 factors could provide
> some added flexibility at sentence, if called for.  Please keep in
> mind, however, that both the United States Code and U.S.S.G.
> suggest the sentence here should be consecutive to the current
> federal sentence.
>
> I offer my thoughts on the matter so that there is no misconception
> about what can or cannot be done for Mr. Mendoza. (footnote
> omitted.)

3.  On July 22, 2008, Attorney Billak filed a motion to withdraw as Mendoza's counsel,

citing a conflict of interest.  The Court granted the motion and appointed Attorney Jaime Serrat,

a qualified federal criminal law practitioner with over 20 years of experience to represent

Mendoza.  The Court ultimately scheduled jury trial for November 19, 2008.

4.  AUSA Yannucci had several general discussions with Attorney Serrat about resolving

Mendoza's case by way of a plea to a mandatory minimum statutory penalty of 20 years, with

the potential of a downward departure should Mendoza provide substantial assistance; however,

Mendoza showed no inclination to accept the proposed plea resolution.

5.  In preparation for a possible trial, Attorney Serrat made eighteen visits to the

Northeast Ohio Correctional Center (NEOCC) to allow Mendoza to listen to hours of intercepted

Title III telephone conversations.  Further, Attorney Serrat spent multiple hours discussing case

5

(5:08 CR 189)

strategy, drafting Motions to Suppress, and arguing Motions to Suppress on the defendant's

behalf.

      6.  The Court conducted hearings and/or heard argument on the defendant's motions on

September 18, 2008, October 23, 2008, and November 18, 2008 - the day before scheduled jury

trial.[3]

      7.  On November 18, 2008, the Court held a colloquy with Mendoza on the record as to

whether a plea agreement had been presented to him, and whether he understood the terms of the

offer.[4]

      8.  During this November 18, 2008, colloquy, AUSA Yannucci presented a proposed

_____

[3]The defendant's proposed finding of fact submitted by Federal Defender attorney
Timothy Ivey on behalf of the defendant includes the following claim which the Court
finds without merit and rejects.

> "Mr. Mendoza-Almendarez claims that on November 18, 2008, the
> Court held a conference between Mr. Yannucci and Mr. Serrat
> outside of his presence.  Mr. Mendoza-Almendarez claims that he
> was not in attendance at this hearing, in which the Court discussed
> with Mr. Yannucci and Mr. Serrat various issues relating to the
> upcoming trial and possible plea negotiations.  Mr. Mendoza-
> Almendarex also claims that at this hearing, his initials were
> placed on Govrnment's Exhibit 3, a proposed plea agreement, but
> Mr. Mendoza-Almendarez did not put his initials on this
> document."

[4]The Court has adopted the practice of inquiring of a defendant prior to the
commencement of a trial whether there have been guilty plea discussions and whether the
defendant has been advised as to the nature of the guilty plea discussion.  The Court
conducts such a hearing after several convictions were challenged by defendants who
contended that the assigned defense counsel had never discussed with the defendant the
possibility of entering into a guilty plea after the government had proposed such a guilty
plea, and in situations where the eventual sentence exceeded the government's proposal
in a proposed plea agreement.  The Court's practice followed its decision in *United States
v. Dabelko*, 154 F. Supp. 2d, 1156 (N.D. Ohio 2000).

(5:08 CR 189)

written plea agreement to Attorney Serrat.  Attorney Serrat and Mendoza reviewed the written

plea agreement in the courtroom.

9.  After Attorney Serrat and Mendoza finished reviewing the written plea agreement, the

Court inquired of Mendoza, who was present in the courtroom, as to whether he understood the

proposed plea agreement.  Mendoza replied that he did and that he declined to accept the guilty

plea agreement.

10.  At the Court's request, Mendoza along with Attorney Serrat and AUSA Yannucci,

all placed their initials on the document (government Exhibit 3: Proposed Plea Agreement), and

the Court ordered the proposed plea agreement to be sealed.[5]

11.  On the morning of November 19, 2008 and as jury selection was about to begin, the

government provided Attorney Serrat with the <u>Jencks</u> material of its witnesses, which included,

in part, the grand jury testimony of Delores Borquez-Willis, who purportedly would identify the

defendant's voice in conversations intercepted over the court-authorized Title III wiretap, i.e.,

Joe Diaz.

12.  On November 19, 2008, after receiving the <u>Jencks</u> material, Attorney Serrat,

Mendoza, and Mendoza's wife (Melissa Mendoza) conferred in the U.S. Marshal's interview

room about the prospects of prevailing at trial in light of Delores Borques-Willis' anticipated

---

[5]The Court is not permitted to engage in guilty plea discussions pursuant to the directives
in Rule 11(c)(1) of the Federal Rules of Criminal Procedure.  As a consequence, the
Court does not examine the proposed plea agreement, but where the plea agreement is
rejected, as in this case, orders the plea agreement placed under seal in the event a
later dispute arises as to the content of the proposed plea agreement and in recognition of
the difficulties that may arise as more further discussed in *United States v. Dabelko* to
which reference is made in footnote 4.

(5:08 CR 189)

trial testimony, and the intercepted Title III conversations.  Luis Mendoza, Melissa Mendoza and

Attorney Serrat also discussed the government's plea offer.  Attorney Serrat explained the

proffer process and that the plea offer contained a recommendation of a mandatory minimum 20

year statutory sentence, with the potential of a lesser sentence if Mendoza cooperated and

provided information of value to the government.  Contrary to Mendoza's subsequent

contentions, Attorney Serrat never told Mendoza that the plea proceedings would be fake and of

no effect.

13.  On November 19, 2008, as the jury was about to enter the courtroom, Mendoza told

Attorney Serrat that he wanted to accept the plea deal.[6]

14.  On November 19, 2008, AUSA Yannucci printed a copy of the plea agreement that

had been presented to Mendoza the previous day, and at Attorney Serrat's request, the

government agreed to modify the agreement by lining out the provision which called for a two

level enhancement for "organizer, leader, manager or supervisor."

15.  On November 19, 2008, prior to Mendoza entering his guilty plea, the Court

conducted a full Rule 11 plea colloquy with the defendant.  The Court reviewed with the

defendant his constitutional rights as well as the terms of the written plea agreement, including

the United States Sentencing Guideline factors, the fact that upon the guilty plea Mendoza faced

---

[6]In the proposed findings of fact submitted by Mr. Ivey on behalf of the defendant, the
defendant "claims from the onset of the case his desire was to go to trial, and that it is
still is [sic] desire to go to trial in the pending case.  However, the events surrounding
November 18 and 19 both intimidated and coerced Mr. Mendoza-Almendarez in taking a
plea."  After reviewing the colloquy with the defendant at the time of his guilty plea, the
Court finds his post-conviction plea of coercion and intimidation to be without merit.

(5:08 CR 189)

an enhanced mandatory minimum 20 year statutory sentence absent any motion from the

government for a substantial assistance departure, and that the Court would decide whether the

sentence should be served concurrent or consecutive to the California federal sentence Mendoza

was presently serving.  Mendoza acknowledged that he signed the plea agreement, had reviewed

it with Attorney Serrat before signing it, and fully understood the terms of the agreement.  The

Court emphasized that even though Mendoza had signed the plea agreement, he was free at any

time prior to actually entering a guilty plea to the charge to change his mind and proceed with

trial.

     16.  On November 19, 2008, prior to Mendoza entering his guilty plea, the Court asked if

the defendant agreed with the factual basis set out in the plea agreement.  Mendoza affirmatively

acknowledged the accuracy of the factual basis, which in part stated:

> C.  In furtherance of the goals thereof, and to conceal the existence
> of the conspiracy, the defendant and others performed overt acts
> including, but not limited to, the following:
>
>> (1) On December 12, 2004, LUIS MENDOZA
>> (driver) and a "Sarah Gudino" (passenger) were
>> stopped westbound on Interstate 44 by a Missouri
>> State Trooper.  MENDOZA identified himself
>> through a State of Ohio driver's license in the name
>> of "Rogelio Garcia."  The Trooper ultimately seized
>> $481,790.00 in U.S. currency from an electronically
>> controlled hidden compartment in the vehicle,
>> which constituted proceeds of drug trafficking.
>>
>> (2) On multiple occasions from at least late 2004 to
>> late 2005, at Akron, Ohio, Michael Lashawn
>> Spragling distributed a total of approximately 20
>> kilograms of cocaine to Jonathon Foreman.
>>
>> (3) On or about May 5, 2005, LUIS MENDOZA

9

(5:08 CR 189)

identified himself to a Burbank, California, police officer with an Ohio driver's license in the name of "Rogelio Garcia," but displaying his photograph.

(4) On June 8, 2005, law enforcement officers executed a search warrant at 17052 Lorillard Street, Granada Hills, California -- the residence of LUIS MENDOZA. Present at the residence were MENDOZA's family members and Robert Giovanni Flores. Among items seized were the Ohio driver's license in the name of "Rogelio Garcia," a California driver's license in the name of "Luis Mendoza," and several letters addressed to "Pops."

(5) During 2005, on multiple occasions, LUIS MENDOZA arranged deliveries of cocaine and heroin, through Robert Giovani Flores and others, to Michael Lashawn Spragling in Akron, Ohio.

(6) On December 7, 2005, at approximately 7:41 p.m., in a court-authorized Title III interception of a telephone conversation, Michael Lashawn Spragling told LUIS MENDOZA he was ready for a shipment of cocaine. MENDOZA advised Spragling to be ready for a quantity of heroin also.

(7) On December 10, 2005, at approximately 2:07 p.m., in a court-authorized Title III interception of a telephone conversation, LUIS MENDOZA asked Michael Lashawn Spragling if Spragling would be ready for a shipment of cocaine and heroin later that week. MENDOZA further inquired if Spragling wanted one or two kilograms of heroin.

(8) On December 15, 2005, at approximately 4:26 p.m., in a court-authorized Title III interception of a telephone conversation, "Bobo" (Robert Giovani Flores) would be there in about five minutes.

(9) On December 15, 2005, at Akron, Ohio, at approximately 8:25 p.m., Robert Giovani Flores

10

(5:08 CR 189)

was stopped by law enforcement shortly after leaving Michael Lashawn Spragling. Flores possessed $26,084.00 in U.S. currency which constituted proceeds of cocaine and/or heroin sales by Michael Lashawn Spragling.

(10) On December 15, 2005, in a series of court-authorized Title III interceptions of telephone conversations beginning at approximately 9:29 p.m., LUIS MENDOZA and Michael Lashawn Spragling discussed the police seizure of money from Robert Giovani Flores.

(11) On or about December 19, 2005, at Cleveland, Ohio, Robert Giovani Flores possessed $222,410.00 in U.S. currency as proceeds of cocaine and/or heroin sales.

(12) On December 19, 2005, at approximately 12:40 p.m., 3:04 p.m., and 3:30 p.m., in separate court-authorized Title III interceptions of telephone conversations, LUIS MENDOZA and Michael Lashawn Spragling discussed Robert Giovani Flores and the police seizure of money from Flores that day. MENDOZA referenced a money seizure one year earlier and told Spragling that his man could not cover for him anymore. MENDOZA further advised Spragling that MENDOZA would have to see "Papa" before they made a visit to his family.

D. The totality of the government's evidence demonstrates that LUIS MENDOZA's personal, jointly undertaken, and reasonably foreseeable relevant criminal conduct concerning Count 1 of the indictment involved the negotiation, acquisition, transportation and/or distribution of at least 15 kilograms of cocaine and at least one kilogram of heroin.

The defendant, LUIS MENDOZA, acknowledges that the above outline of his conduct does not set forth each and every act he committed in furtherance of the offenses to which he is pleading GUILTY, and that the government could prove other acts

11

(5:08 CR 189)

evidencing his criminal conduct.

17.  On November 19, 2008, prior to accepting Mendoza's plea, the Court asked if the defendant understood the sentencing consequences of pleading guilty, and whether his plea of guilty was voluntary and in exercise of his own free will.  Mendoza answered in the affirmative. The Court further inquired if anyone had forced or threatened Mendoza to plead guilty. Mendoza answered, "No, sir."[7]

18.  On November 19, 2008, after Mendoza entered his guilty plea, the Court sentenced Delores Borques-Willis to "time served" with three years of supervised release, thereby concluding the government's case against her.

19.  On November 19, 2008, after Mendoza's plea hearing concluded, Mendoza, Attorney Serrat, AUSAs Yannucci and Baeppler, and DEA Agent Borchert met in the U.S. Attorney's Office and discussed the benefits of a possible proffer by Mendoza.  The government explained that it was satisfied with the mandatory minimum sentence which was contained in the plea agreement; that the defendant potentially could receive a lesser sentence if he cooperated

---

[7]The proposed findings of fact filed by Mr. Ivey contains the following declaration:
> "During the plea colloquy, Mr. Mendoza-Almendarez multiple discussions (verb missing) on the record with Mr. Serrat, in which Mr. Mendoza-Almendarez inquired whether the sham plea agreement on the record was actually a cover-up.  Mr. Mendoza-Almendarex also inquired to Mr. Serrat why the Court was making reference to substantial assistance when such discussions were supposed to be off the record.  Mr. Mendoza-Almendarez says that Mr. Serrat assured him not to worry about it and that all the beneficial parts of the plea agreement would be done off the record."

The Court notes that the testimony of Mr. Serrat was to the contrary and the Court rejects the proposed fact finding concerning the alleged "sham plea agreement."

(5:08 CR 189)

and his cooperation was of value.  The government outlined the proffer process, and in response to Mendoza's inquiries repeatedly stated that no guarantees about a sentence reduction could be given until after Mendoza provided his information and it could be evaluated for truthfulness and value.  At the conclusion of the meeting, it was left to Mendoza to decide whether or not he wished to cooperate in an attempt to secure a sentence beneath the mandatory minimum 20 years.

20.  In January, 2009, Mendoza instructed his wife, Melissa Mendoza, to contact Special Agent Borchert and ask why a proffer session had not been scheduled.

21.  At no time did Mendoza provide the government with a formal proffer, or with specific names or other information of persons involved in drug distribution.

22.  In January, 2009, Mendoza advised Attorney Serrat that he wanted to withdraw his guilty plea, and further that he would not cooperate with the Probation Department in the preparation of a pre-sentence report.[8]

23.  On or about January 20 2009, (62 days after the guilty plea) Mendoza filed a notice of intent to withdraw the plea.

24.  On February 17, 2009, (90 days after the guilty plea) Mendoza in fact filed a <u>pro se</u>

---

[8]The proposed fact findings submitted by Mr. Ivey on behalf of the defendant contained the following declaration:

> "When Mr. Mendoza-Almendarez received a copy of the transcript
> of the hearing from November 18, 2009, and learned for the first
> time that this hearing took place, *and was held outside his*
> *presence.*  Mr. Mendoza-Almendarez subsequently filed a Notice
> of Intent to withdraw his plea."  (Emphasis added.)

The Court rejects the proposition that the November 18, 2008 colloquy with the defendant, as previously described, was not conducted in his presence.

13

(5:08 CR 189)

motion to withdraw his guilty plea, asserting that his counsel was ineffective, and coerced him

into pleading guilty to an offense that exposed him to a mandatory life sentence.

    25.  Mendoza has extensive knowledge of the criminal justice system, both on the state

and federal levels, and actively participated in the strategies and pleadings that have been filed in

this case.

### III.  The Applicable Criminal Rule of Procedure and Case Law

    Criminal Rule 11(d) provides:

> Withdrawing a Guilty or Nolo Contendere Plea.  A defendant may
> withdraw a plea of guilty or nolo contendere:
>
>> (1) before the court accepts the plea, for any reason
>> or no reason; or
>>
>> (2) after the court accepts the plea, but before it imposes
>> sentence if:
>>
>>> (A) the court rejects a plea
>>> agreement under Rule 11(c)(5); or
>>>
>>> (B) the defendant can show a fair
>>> and just reason for requesting the
>>> withdrawal.

    In this case, the defendant has the burden of showing a fair and just reason for requesting

the withdrawal of his guilty plea.

    In that context, the teachings set forth in *United States v. Goldberg*, 862 F2d. 101 (6th

Cir. 1988) remain relevant.  *Goldberg* instructs at pages 103-104 as follows:

> The permission to withdraw a guilty plea prior to sentencing is not
> an absolute right but is a matter within the broad discretion of the
> district court.  *United States v. Spencer,* 836 F.2d 236, 238 (6th
> Cir. 1987); *United States v. Triplett,* 828 F.2d 1195, 1197 (6th Cir.

14

(5:08 CR 189)

1987); *United States v. Usher,* 703 F.2d 956, 959 (6th Cir. 1983); *United States v. Kirkland,* 578 F.2d 170, 173 (6th Cir. 1978).  The recent decisions of this circuit in *Triplett* and *Spencer, supra*, enumerate a number of factors that the district court may consider in evaluating whether a defendant has established, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, a "fair and just reason" to withdraw his guilty plea.  Those factors include: (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted.

We find the district court did not abuse its discretion in not allowing Dr. Goldberg to withdraw the guilty plea.  While the district court did not specifically refer to the factors set forth in the *Triplett-Spencer* decisions, the district court was obviously aware of the lengthy 55-day delay in filing the motion and the fact that the motion followed a three-week trial of co-defendants that Dr. Goldberg avoided by his earlier plea agreement.  Additionally, the district court noted that Dr. Goldberg was a licensed and practicing physician who declared at the time of his guilty plea that he was satisfied with his counsel and was under no duress when he offered his plea and admitted his guilt to the charge.

We observe as this Court did earlier in *Kirkland, supra,* that the Supreme Court has recognized that "the guilty plea and the often concomitant plea bargain are important components of his country's criminal justice system.  Properly administered, they can benefit all concerned." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977).  (footnote omitted.)  Upon our review of the record, we find that the district court did not abuse its discretion in denying Dr. Goldberg's motion to withdraw his guilty plea.

<u>IV.  A Summary of Mendoza's *Pro Se* Post-Hearing Brief</u>

Mr. Mendoza advances several arguments in support of his motion to withdraw his guilty

15

(5:08 CR 189)

plea.  First, he complains that the Court delayed in unsealing copies of the proposed plea

agreement and the transcript of the plea offer discussion filed under seal.  It is not clear to the

Court how the delay in responding to his *pro se* motion interfered with his motion to vacate his

guilty plea.  Surprisingly, Mendoza testified that he was not present when the Court engaged him

in the discussion as to whether he understood the proposed guilty plea agreement and when he

indicated that he would not accept the plea agreement.  Secondly, the defendant objects to the

fact that his separate motions for a deposition subpoena for his wife were , in the first instance,

denied and in the second, not responded to.

   Mendoza also complains about the appointment of the Federal Public Defender to

represent him at the evidentiary hearing and objects to the Court's denial of his request for a

continuance.   The defendant contends that the denial denied him the effective assistance of

counsel, but fails to indicate how the denial constituted prejudice to him.

   The defendant also contends that it violated First Amendment standards when it sealed

the proposed plea agreement and the transcript of the plea offer discussion.  The defendant

obviously does not understand the fact that the Court is not permitted to engage in guilty plea

discussions, and for that reason alone, seals the proposed plea agreement.  The second reason for

initialing the proposed plea agreement is to avoid disputes, as to what the government had

offered, in those situations where the defendant is subsequently convicted and given a greater

sentence than provided for in the proposed guilty plea agreement.  The defendant continues to

contend that he never initialed the plea agreement and the Court finds such a denial beyond

belief, as the Court was present when the defendant was given the opportunity to agree to the

16

(5:08 CR 189)

plea agreement and asked to initial the plea agreement, as he did.

Of persuasive interest to the Court is the fact that at no time has the defendant ever contended that he was not the "Joe Diaz" of the intercepted Title III conversations, nor does he ever deny that he was involved in the massive conspiracy to provide controlled substances, i.e., cocaine and heroin, to the Spragling gang.

## V.  The Court's Ruling

After considering the fact that the defendant has never asserted a defense, the length of time between the entry of his guilty plea and the motion to withdraw the guilty plea, the failure of the defendant to present grounds for withdrawal of the guilty plea at an earlier time, the fact that the defendant's motion to withdraw his guilty plea followed the sentencing of Delores Borquez-Willis and her return to California so that there remained the possibility that the government would be unable to produce Delores Borquez-Willis at a subsequent trial and the potential prejudice to the government if the defendant's belated motion to withdraw his guilty was granted, the Court finds, after considering the teachings of the Sixth Circuit as above described, that the defendant's *pro se* motion to withdraw his guilty plea is without merit and is DENIED.

IT IS SO ORDERED.


   September 15, 2009                          /s/ David D. Dowd, Jr.
Date                                        David D. Dowd, Jr.
                                            U.S. District Judge

17